TIMOTHY WRIGHT, Appellant,

*vs.*

WILLIAM P. YOUNG, Appellee.

APPEAL IN EQUITY FROM THE MILWAUKEE CIRCUIT COURT.

*Semble*: That a party will not be prejudiced by an act done by him under a decree or order of a competent court legally and regularly made.

Where money, paid into court by way of tender, has been withdrawn by special permission and order of the court, such withdrawal cannot be held to work a forfeiture of any right acquired by such tender or payment into court.

Where the vendor repudiates the alleged sale, and it is apparent from the facts and circumstances that the money would be refused, tender of the purchase money before bringing a bill for specific performance, would seem to be unnecessary.

An agreement, in general terms, to convey real estate, is not complied with by the tender of a quit-claim deed, without a release of the dower of the wife of the grantor.

Such an agreement calls for a conveyance of the entire estate in the lands sold, by a good and sufficient deed.

When the vendee seeks specific performance of the contract, and the vendor has not the same interest in the estate he contracted to sell, or there is a deficiency in the quantity, he has the option to compel a conveyance to him of such interest as the vendor may be enabled to convey, with compensation for the deficiency, or an abatement out of the purchase money.

Where specific performance is decreed against the vendor, and his wife refuses to release her dower in the premises, the vendee may have an abatement of the purchase money, or compensation for the outstanding contingent estate.

An inchoate right of dower outstanding is a defect in the title, and an incumbrance upon the estate.

Rule for calculating the value of an inchoate right of dower indicated.

*Young vs. Wright*, 4 *Wis. R.*, 144, re-affirmed.

This case was fully reported, (4 Wis. R., 144), when before this court on a former occasion, and to which reference is now had. The cause having come up again, on an appeal from a final decree of the circuit court, reference is further had to the

opinion of the court herein delivered, for the facts now presented in the case, upon which the decision is founded.

*Brown and Ogden* for Appellant.

*Finch and Lynde*, for Appellee.

*By the Court*, COLE J. After the very full consideration bestowed upon this case when it was before this court at the June term, 1855, and the opinion then given, which is to be found in 4 *Wis.*, 144, we do not feel called upon to enter at any length upon a re-examination of questions then determined, respecting the rights and obligations of the parties to the written contract set forth in the complainants' bill. We were then led to the conclusion which subsequent argument and reflection have rather strengthened than weakened, that the contract was a fair and reasonable one, sufficiently explicit in its terms to show what land was intended to be sold, and such a contract as should be specifically performed. We stated that we could see no peculiar circumstances of hardship attending the sale, which ought to prevent a performance of the contract; that the land appeared to have been sold for a fair price, and that the fact that it had, since the contract was entered into, become more valuable, was not a circumstance which ought to prevent a decree for a specific performance. We supposed that the power of attorney authorized Day to make a full and unconditional sale of the land, and that the written contract of sale was competent and adequate to bind the principal to make a good title to the land. It was undoubtedly with this understanding of the decision of this court, that the Circurt Court of Milwaukee county entered the decree from which the present appeal is taken, directing and ordering that the complainant should pay to the clerk of that court, for the use of the defendant, the sum of eight thousand seven hundred and seventy-nine dollars and twenty-two cents, [being the amount due the defendant on

the contract for the purchase money of the lands,] and that the defendant, within a given time, should execute and deliver to the clerk, for the complainant, a good and sufficient deed of the premises, with the dower of the wife released, and that in the event a valid release of the dower of the wife was not obtained, the case was to be referred to a court commissioner to take proof and report the value of the dower interest outstanding. It is admitted in a stipulation among the papers, signed by the counsel of the parties, that after the decree was entered in this court, the appellant executed and tendered to the complainant, a quit-claim deed, properly acknowledged, and that the money, and note mentioned in the contract were demanded, but that the same were refused by the complainant on the ground that the ·deed was not signed by the wife. And it further appears from the record, that a decree *pro confesso* had been entered in the cause, March 1, 1854, and that in pursuance of the terms of this decree, the sum of two thousand one hundred and seventy-five dollars was paid by the complainant into the court, for the use of the appellant, and that afterwards, upon the appellants filing a petition in the Circuit Court, asking that the decree of the Circuit Court should be set aside, and he be permitted to make defence to the suit, the Circuit Court ordered the decree *pro confesso* to be set aside upon the appellants paying costs; and at the same time ordered that the complainant be permitted to withdraw his money from the court. Some question has been made as to the right of the complainant to withdraw his money once paid into court, and it has been contended that by such withdrawal and the subsequent refusal to pay the purchase money when demanded, and to execute the contract, the complainant had forfeited all rights under it, and must in law be held to have discontinued his suit. We cannot adopt this view of the matter. We do not understand that a court of equity, even in the first instance, requires a tender of money to be made, when, from the facts and circumstances of the case it is apparent that a tender would be useless, and the receipt of the money refused by the opposite party. In this case the appellant has, from

the outset, resisted a performance of the contract, and insisted that it was not binding upon him. Any tender to him, while occupying this ground of defense, would have been an idle ceremony. He would have had nothing to do with the money, and would not have compromised his rights by receiving it. This must be obvious to every one. Therefore, how could he have been prejudiced by the withdrawal of the money from court? Again it seems to us there is another very sufficient answer to be given to this objection. By the terms of the order, permitting the appellant to come in with his answer, the complainant had leave to withdraw the sum of money paid in. This was a part of the order of the court; an order which it was entirely competent for the court to make. The appellant availed himself of the conditions of this order, and is in good faith as much bound by the conditions which were intended for the benefit of his adversary as by those which worked for his advantage. As to the other points, we are of the opinion that the complainant was not bound to accept the deed which was tendered by the appellant. That was a quit-claim deed, without the dower of the wife released. From the first, as already indicated, we were of the opinion that by the contract, the bargainor had agreed to convey the entire estate in the land sold, by a good and sufficient conveyance. Such is our understanding of this contract. The only difficulty we have had in the case, was whether if the wife should refuse to release her dower, and the vendee should be willing to take such a title as the husband could give, there could be an abatement of the purchase money in compensation for the right of dower left outstanding. And to remove our doubts upon this point, a re-argument of the case was ordered. In our investigations, we fell upon the case, *Clark vs. Seiver*, 7 Watts, 109, in which the court held that an abatement of the purchase money under such circumstances could not be made. But that the bargainee must pay the consideration money, and content himself with such a title as the husband could give, or forego a specific performance of the contract, and bring his action at law for damages. We are not prepared to adopt the doctrine

of this decision. In the notes to the case of *Seton vs. Slade*, White & Tudor's equity cases Vol. 2, part 2 (found in vol. 70, Law Library, page 23,) the English annotators state the rule, when the purchaser seeks specific performance of the contract, and the vendor has not the same interest in the estate as that which he had contracted to sell, or there is some deficiency in the quantity of it, as follows: "It may be laid down as a " general rule, subject, however, to some few exceptions, that " a purchaser may, if he choose, compel a vendor who has con- " tracted to sell a larger interest in an estate than he has, to "convey to him such interest as he is entitled to, with com- "pensation." They then quote from the opinion of Lord El- don, in the case of *Morttock vs. Buller* 10 Ves. Jr., 292, the following observation: "If a man having partial interests in " an estate, chooses to enter into a contract, representing it and " agreeing to sell it as his own, it is not competent to him af- "terward to say, though he has valuable interests he has not " the entiret,y and therefore the purchaser shall not have the " benefit of his contract. For the purpose of this jurisdiction, " the person contracting under those circumstances is bound " by the assertion in his contract, and if the vendee choose to "take as much as he can have, he has a right to that, and to " an abatement, and the court will not hear the objection by " the vendor that the purchaser cannot have the whole." Lord Eldon held, however, that these well-settled principles had no application to the case then before him, and therefore left the plaintiff to his action at law. Justice Story, in his work on Equity Jurisprudence, Vol. 2, Sec. 779, lays down the doctrine upon this subject, and says: "The general rule, (for it is not universal) in all "such cases is that the purchaser if he chooses, is entitled to have "the contract specifically performed as far as the vendor can per- "form it, and to have an abatement out of the purchase money, "or compensation, for any deficiency in the title, quantity, qual- " ity, description or other matters touching the estate." See the cases referred to in the note to this section, *Nelthrop vs. Holgate*, 1 Collyer, 204; (28 Eng. Chy. R.;) *Waters vs. Travis*, 9 J. R., 465. The above are but a few of the many cases

which might be cited to show that a vendee may enforce a performance of a contract, by compelling the vendor to give the best title he can, and have a just amount of abatement from the purchase money for the deficiency of title, or quantity, or quality of the estate. In the present case there is nothing to show that the wife is unwilling to relinquish her right of dower in the premises, and we do not feel authorized, from the proof, to presume that to be the fact. She may be entirely willing to sign the deed, and release her dower, upon being requested so to do by the husband; but if she should refuse to release her dower, we are unable to see any good or satisfactory reason for denying the complainant a proper compensation for the right of dower left out standing. What argument can be advanced to show that an abatement or equivalent should not be made in this case, which would not be equally cogent and weighty in any case where the vendor's interest is less than what he professed to sell. Dort. on Vendors, p. 501. There can be no doubt but the title of the vendee is defective while the incohate right of dower is left outstanding. If the wife should survive the husband, the vendee's title might be partially defeated by her taking a life estate in one-third of the premises. In the case of *Shearer vs. Ranger*, 22 *Pick.*, 447, it was held that an incohate or contingent right of dower, was an existing incumbrance amounting to a breach of the covenant which extends to all adverse claims " and liens " on the estate conveyed, whereby the same may be defeated " in whole or in part, whether the claims or liens be uncertain " and contingent or otherwise." *Rawle on Cov. of Title*, 136, *et seq.*, and cases cited by him. We therefore conclude that in the present case, the vendee can enforce a performance of the contract, and take such a title as the vendor can give, and have an abatement of the purchase money for the right of dower left outstanding. Some question has been made as to whether the value of this dower interest could be accurately calculated. There can be no difficulty, however, in ascertaining what this reversionary interest is worth. In *Davis and Peck's Mathematical Dictionary*, and by *Cyclopedia of Mathematical Sci-*

*ence*, page 501 and 502, formulas are given, by which the present value of an annuity can be calculated which is to commence at the death of one individual and terminate at the death of another. In *Emerson's Miscellanies*, p. 96 and 97, can be found a like formula. The interest of the wife in the estate sold being susceptible of calculation, we see no hardship in deducting the value thereof from the purchase money, if she is unwilling to relinquish her dower.

The decree of the Circuit Court is affirmed with costs.