## PRESSER v. HILDENBRAND.

1. **Vendor and vendee:** FORFEITURE OF CONTRACT. Where time is not the essence of a contract for the sale of real estate, a failure to pay the purchase-money by the time fixed therein is not a cause of forfeiture.

2. —— HOW CONTRACT MAY BE FORFEITED. Where time is not the essence of the contract, it may, nevertheless, be made such by giving notice to the vendee, that the contract will be forfeited by a designated date which must afford a reasonable time for performance, and the failure of the vendee to perform within this time constitutes a cause of forfeiture.

3. —— INCAPACITY OF VENDOR. If the vendor is not in a condition to perform his part of the contract by conveying a full and clear title to the property, as where his wife refuses to join in the deed, he cannot terminate the rights of the vendee by demanding the whole of the purchase-money.

4. —— ELECTION OF VENDEE: CASE FOLLOWED. In such a case, it is optional with the vendee, either to refuse such partial title, and seek his remedy in damages for a breach of the contract, or accept performance to the extent of the vendor's ability, retaining so much of the purchase-money as shall be proportionate to the highest outstanding interest. The case of *Leach* v. *Forney*, 21 Iowa, 271, followed.

5. —— HOMESTEAD. It would be no obstacle to a decree for performance, to the extent of his ability, against a vendor whose wife refused to join him in the deed, that the boundaries of the homestead had not been designated, platted and recorded, and that she might still have this done under the statute, giving the homestead such form as they might elect, for the decree itself might provide for this, by directing the homestead to be marked, platted and recorded within a prescribed time.

*Appeal from Benton District Court.*

THURSDAY, DECEMBER 19.

SUIT in equity by the vendee against the vendor for a specific performance. On the 12th of April, 1866, defendant contracted in writing, his wife not joining therein, to convey to plaintiff his farm, of one hundred and sixty acres, for the sum of $2,200. At the date of the contract, $200 was paid thereon, and, by its terms, the balance was to be paid the first of May following, at which time he was to give a good and sufficient warranty deed, etc. This he refused to do, and plaintiff brought this suit to compel defendant to perform his contract, but failed in his action, and appeals from the judgment of the court below.

The facts in the cause will more fully appear in the report of the referee, embodied in the opinion of this court.

*C. H. Conklin* for the appellant.

Time is not presumed to be of the essence of the contract unless so stipulated therein. Though not so stipulated, it may be made so by the peculiar circumstances in which the parties are placed, or the peculiar situation or character of the property in reference to which the parties must be presumed to have contracted, or by the subsequent acts of the party against whom it is sought to be enforced, as where the vendor demands payment strictly on the day fixed, and then and there promptly gives notice of his determination to treat it as forfeited, offering to return what he may have received under it; or, though the vendor has not demanded strict performance at the time, but has by his conduct waived it for the time being, or by continuous demands of and negotiations for performance, has continued to recognize its binding force, yet by giving notice, verbally or in writing, that such payment or performance must be made by a time fixed (which must be a reasonable time) or he shall treat the contract as forfeited, he may thus render time of the essence and cut off the rights of the vendor thereunder. But if the vendor cannot make good his own contract, as if there are incumbrances on the land, or the title is otherwise defective, he is in no position to insist on performance by the vendee, although the vendee may himself at his election accept and even compel a performance *pro tanto*, and insist upon an abatement of purchase-money, by way of damages. See Fry on Spec. Per. of Con. (2 Am. ed.) 412, 430, marginal paging 312–326, and the American notes and cases cited; Id. 202 *et seq.*, m. p. 137; Id. 344–349; see also 11 Paige Ch. 352, and especially the opinion of the vice chancellor, on page 353 *et seq.*, which opinion was concurred in by the chancellor on appeal, 9 N. Y. 535; 5 Abb. N. Y. Dig. 328, § 23; 329,

§ 34; 20 Johns. 15; existence of incumbrance dispenses with tender by vendee, 5 Abb. N. Y. Dig. 329, § 37; 12 Barb. 137; 9 N. Y. 525; rescinding by notice, see 5 Abb. N. Y. Dig. 336, § 113; 16 Barb. 629; outstanding mortgage, etc., Id. 337, § 122, and cases cited; 20 N. Y. 184; need not accept doubtful title, Id. 72; § 99, Hopk. Ch. 436; 2 Edw. Ch. 315; and see on the main propositions above stated, Hilliard on Vend. 189, 193; 2 Barb. 37; Hill. on Vend. 196 and note; Id. 236, *et seq.* See also Dill. Dig. 711–725, and especially §§ 3, 5, 7, 11, 15, 18, 40, 49, 51, 53, 54, 56, 58, 60, 62, 65, 69, 71; also Ham. Dig. 717, 720, and see §§ 7, 12, 15.

A *good and sufficient deed* provided for in a contract to convey, means a good title, and tender of a warranty deed by vendor is not enough. 5 Abb. N. Y. Dig. 328, § 20; 4 N. Y. 396; 14 Barb. 418.

In cases of contract of sale of real estate, the vendee has an election whether he will take a specific performance of the contract *pro tanto,* and damages or abatement of the purchase-money as to the residue, or whether he will go for damages exclusively. See 5 Abb. N. Y. Dig. 64, § 18; Id. 73, § 113; Holcomb's Eq. 129; Story's Eq. § 779, and note; Will. Eq. 287· 3 Sand. Ch. 72; 2 Barb. 37; 11 Paige Ch. 277.

*Vanatta & Gilchrist* for the appellee.

Lowe, Ch. J. — The following is the referee's finding of the facts of the case, as well as his conclusions of law:

1. That on the 12th day of April, A. D. 1866, the defendant, Henry A. Hildenbrand, was the owner in fee, and occupied the south-west quarter of section 15, township No. 83, range 12 west.

2. That Parmelia Hildenbrand, defendant, was on the 12th day of April, 1866, and had been for a long time prior thereto, and is now the wife of the said Henry A.; that at the time aforesaid, to wit, April 12,

1866, and for a long time prior thereto, and ever since, she resided and has resided with her husband and family on said described premises.

3. That the dwelling-house in which the said Henry A. and the said Parmelia resided on the 12th of April, 1866, and ever since, together with the barns, stables, and other out-buildings used and occupied by them, is situated on the south-east quarter of said south-west quarter of section, town and range aforesaid.

4. That neither the said Henry A. nor the said Parmelia, has at any time selected, or caused to be marked out and platted and recorded, any part or portion of said premises as a homestead.

5. That on the said 12th day of April, 1866, the said plaintiff and defendant Henry A., entered into a written contract, in and by which the said Henry A. agreed to sell and convey to the said plaintiff the whole of said S. W. ¼ of sec. 15, T. 83, R. 12, at and for the consideration of two thousand two hundred dollars.

6. That plaintiff then and there paid the said Henry A. the sum of $200 on said contract, and therein agreed to pay him the balance of said purchase money, to wit, $2,000, on the 1st day of May, 1866.

7. That on the 23d day of April, 1866, the said plaintiff, in pursuance of an understanding between him and the said Henry A., had at the time said contract was entered into, entered upon and took possession of a portion of the dwelling-house on said farm, and also all of said farm except about 35 acres, which was leased by defendant Henry A. to one John Hildenbrand, and a part of said dwelling-house, stabling and the oats granary; that plaintiff took possession of said portion of said premises with the knowledge of defendants Henry A. and Parmelia, and retained possession thereof without objection until the 5th day of May, 1866.

8. That by said agreement of sale, the said Henry A. bound himself to execute and deliver to plaintiff, on the payment of the balance of said purchase money on the first day of May, 1866, a warranty deed for said premises free from incumbrances.

9. That at the date of said contract and on the 1st day of May, 1866, there was, and still is, a legal, valid and subsisting incumbrance by mortgage on said lands in favor of one Lewis, in the sum of $600, with interest thereon at the rate of eight per cent per annum from the 22d day of December, 1864, that said mortgage was made by said Henry A. to said Lewis, December 22, 1864, and filed for record in the recorder's office of Benton county, April 13, 1865, that said incumbrance is still a valid and subsisting lien on said lands and now amounts to the sum of $705.34 or thereabout.

10. I further find that on the 1st day of May, 1866, the records of Benton county showed that a mortgage had been executed on said

premises to one Gould for $300, and also one to Adam Hildenbrand for $1000; that said mortgages were not canceled of record; but that the plaintiff was on that day and before that time notified and informed that said two last mentioned mortgages were paid off and satisfied in fact.

11. That at the time said contract was entered into, the said plaintiff was informed, and had notice that the records of Benton county showed the execution and recording of said mortgages, and that said mortgages were all paid except the amout due to said Lewis.

12. That on the 5th day of May, 1866, plaintiff being still in possession of said premises as aforesaid, and the balance of said purchase-money not having beed paid, defendant Henry A. demanded of plaintiff the said balance, to wit, the sum of $2000, but that plaintiff then and there refused to pay the same.

13. That a short time after said demand and refusal, to wit, on said 5th day of May, defendant Henry A. offered to return to plaintiff the $200 before that time received by him on said contract, and to cancel the same, but that said plaintiff then and there refused to receive said money or to cancel said contract; and that thereafter, on the 7th day of May, defendant Henry A. caused a notice in writing to be served on plaintiff requiring him to quit possession of said premises.

14. That, on the 7th day of May, 1866, plaintiff tendered to said Henry A. the sum of $2000 on said contract and demanded a deed for said premises, which money said Henry A. declined to receive; and he also declined to execute said deed; that afterward, to wit, on the 10th of May, 1866, plaintiff tendered to said Henry A. the sum of $2005 as the amount, principal and interest, due on said contract, and demanded a deed for said premises, but the said Henry A. declined to accept said money or execute said deed.

15. I find that the said Henry A., with his wife and family, still occupy a portion of the dwelling-house referred to on said premises, and that plaintiff now and ever since his entry thereon, has occupied, cultivated and controlled the balance of said premises, except the thirty-five acres leased to said John Hildenbrand, and a portion of the stabling and oats granary.

16. I find that, on the 1st day of May, 1866, the said Henry A. was not able to execute to plaintiff a warranty deed of said premises free from incumbrances by reason of said mortgage lien of said Lewis, and by reason of the homestead interest of said Parmelia in a part of said premises, in a conveyance of which she refuses to join, and by reason of the said Parmelia's inchoate right of dower in the whole of said premises.

17. That, on the 1st day of May, and ever since, the plaintiff has

had moneys sufficient to pay the balance of said purchase-money with interest, and that he is and has been ever since said 10th day of May, willing to pay said moneys with interest on said contract.

18. I find that the said S. E. ¼ of said S. W. ¼ of said premises is worth the sum of $1100, and that the balance of said tract of land is worth the sum of $1100, and that said tracts of land were worth, on the 1st day of May, 1866, said sums respectively.

19. I further find that it was understood between plaintiff and defendant, H. A. Hildenbrand, before the first day of May, 1866, that plaintiff should deduct from the balance of said purchase-money, to-wit, from the said $2,000, the amount due on the Lewis mortgage, and should pay to said Hildenbrand the balance; and that plaintiff should pay off said mortgage to said Lewis, with the purchase-money so deducted.

20. I further find that during the summer of 1866, plaintiff cultivated in wheat, oats and corn, sixty acres of said premises; and that a fair rent for farm land per acre in that neighborhood during said year was $3.

21. I further find that defendant Henry A. received from the said John Hildenbrand, the rents and profits of the thirty-five acres of said land cultivated on said farm by the said John, for the year 1866, and that said rents and profits were reasonably worth $3 per acre, making in the aggregate so received by him of said rents, $105.

My conclusions of law from the foregoing facts are as follows:

1. That plaintiff, by his failure to pay or offer to pay the balance of said purchase-money, to-wit, $2,000 less the amount of the Lewis mortgage, forfeited his contract.

2. That defendant, Henry A., by his demand and offer to repay said $200, and by the notice to plaintiff on the 5th of May, 1866, elected to rescind, and did rescind said contract.

3. That after said forfeiture and rescission, the plaintiff became and was the tenant of the said Henry A., and liable to him for the rents and profits of the farm occupied by him belonging to said Henry.

4. That plaintiff's injunction should be dissolved and the bill be dismissed with costs, but that he receive from the said Henry A. the sum of $200 with six per cent interest, from April 12, 1866, less the sum of $180, being the value of the said land per acre cultivated by defendant for said year 1866.

5. I further conclude that inasmuch as the said Parmelia has refused, and still refuses to join her said husband in any conveyance of her homestead or her inchoate right of dower, and inasmuch as said homestead is not marked out, mapped, platted and recorded by said Parmelia, that said homestead may be at any time selected, marked out, mapped

and platted, and recorded by the said Parmelia, from the said premises or any part thereof, provided the starting point is from some corner of the said dwelling-house, and, therefore, that I am unable to decree a specific conveyance of any part of said premises, lest the same may be hereafter embraced in said homestead, and, therefore, that plaintiff's bill should be dismissed as aforesaid.

Exceptions were filed both to the finding of facts, and the conclusions of law thereon, but they were overruled, and a judgment *pro forma* entered in accordance with the tenor of the report. In reviewing the same, we find that the facts were found with substantial accuracy, but are of the opinion that the exceptions to the conclusions of law should have been sustained.

1. VENDOR AND VENDEE: forfeiture of contract.

Time was not the essence of this contract. A failure, therefore, to pay the remainder of the purchase-money on the first of May, as stipulated in the contract, could not have the effect to work a forfeiture of the same as against the vendee.

The defendant, however, on the fifth of May, made a demand of the plaintiff of the money, and offered to return the $200 which had been paid. This was refused by the plaintiff. The referee held, that this was an election on the part of the defendant to rescind the contract, and that the same was thereby rescinded. This was an erroneous decision. It is true, that when time is not the essence of the contract, it may be made such, and the rights of the vendee cut off by giving notice, that the contract will be forfeited, if the money is not paid by a designated period, which must be a reasonable time. Here there was no unreasonable delay; for in two days after this attempt to render time of the essence of the contract, the plaintiff tendered to the defendant $2,000, the remainder of the purchase-money, which was refused. Afterward, namely, on the tenth of

2. —— how contract may be forfeited.

May, he made a second tender of $2,005, covering the principal and interest, which was also refused, upon the ground, we suppose, that the contract was forfeited, because the payment was not made at once after the demand was made and notice given, but we think the offer to pay was within a reasonable time, and sufficient to satisfy the demands of justice, and keep intact the plaintiff's rights under the contract.

Again, independent of all this, it must be remembered, that under the facts as reported, the defendant could not *3. —— incapacity of vendor.* in equity terminate the rights of the plaintiff by demanding the whole of the purchase-money, for he was in no condition to comply with his part of the contract. His wife would not part with the homestead by joining in the conveyance; there was an existing incumbrance of $600 on the property, and the defendant could not make such title as he had bound himself to do in the contract. How, then, could he assume to treat the contract as forfeited, because the plaintiff, under these circumstances, refused to pay the whole of the money at the time of the demand?

Assuming, then, that the contract is still operative between the parties, and the defendant's wife is unwilling *4. —— election of vendee: case followed.* to relinquish either homestead or dower right, which renders it out of the power of the defendant to make a clear title to all the property, how are the plaintiff's rights, under such circumstances, to be protected and secured to him? As he cannot get the whole, it is not denied that he may throw up the contract altogether and seek his remedy in damages only, or he may elect to take *pro tanto* what the defendant can make title to.

Touching this last right of the plaintiff, the referee held, that, inasmuch as the homestead boundary had not been *5. —— homestead.* designated, platted and recorded, and as the defendant and his wife may still have this

done under the statute, giving the lines thereof such form as they may elect, provided the dwelling was included therein, therefore, he could not decree a specific conveyance of any part of said premises, lest the same be hereafter embraced in said homestead.

This objection is believed not to be sound. In the absence of any recorded designation of the homestead lines, if the defendant and wife should desire that the homestead boundary should take or assume a form different and other than the congressional subdivision forty, on which the dwelling was situated, the same could be provided for in the decree itself, by allowing and directing them to have marked off, platted and recorded their homestead within a prescribed time. If they did not, then the court might direct its officer to do so and report. If they did, then the plaintiff should have a specific performance for the residue of land, under either contingency suggested, by paying $1,100, the value found by the referee at the contract price, less the amount of any unsatisfied mortgage lien there might be resting upon it, and also less the two hundred dollars already paid on the purchase-money at the time the contract was made, and also less the wife's contingent dower right; to determine which, the rule established in the case of *Leach et al.* v. *Forney* (21 Iowa, 271), should be followed, namely, when the wife of the vendor refuses to join with her husband in the execution of sufficient deeds to enable him to perform, on his part, a contract for the conveyance of real estate, the vendee has the option of accepting performance by the husband to the extent of his ability, and the retention of so much of the purchase-money as shall be proportionate to the highest outstanding or contingent interest not conveyed, without paying interest on the same, or to refuse such partial title, and have his damages for a breach of the covenant. etc.

Our decision, therefore, is, that the judgment below be reversed, and the cause remanded, and such a decree entered in that court as shall accord with the principles above indicated.

Reversed.